Good morning. Mitch Tilner for Plaintiff and Appellant Mike Love. I understand Mr. Stillman and I have 15 minutes to share, so I'd like to use seven in my opening. Mr. Stillman will use five, and then I'll use whatever remains for rebuttal. Thank you. Mr. Love's settlement with several of the defendants in this case has eliminated many of the issues on appeal. However, since the Sanctuary Group remains in the case on appeal, I would like to devote my limited time this morning to the order awarding attorney's fees to the Sanctuary Group. That order should be reversed and the issue of fees should be remanded for redetermination. As the Court knows, the award was a lump sum unapportioned among the various statutory grounds for fees and the various causes of action. So if this Court concludes that any of the statutes did not support a fee award or that an award under any statute was improper, then the Court should reverse for a redetermination of the lump sum. Didn't the trial court conclude that the claims were so intertwined that it didn't matter? The Court did conclude that all the claims were intertwined. However, if one of the major legs on the stool, if you will, is knocked out, then I believe the award has to be redetermined. The Court found that there were numerous grounds for the fee award, and so a fee didn't really need to apportion. But if you knock out one of the major grounds, I suggest that apportionment is required. And the ground I'd like to focus on is the fee award under California Civil Code, Section 3344. That's the statutory right of publicity in California. Now, as the Court recalls, Mr. Love alleged that the defendants knowingly used his name and likeness for their own commercial purposes without his permission. Under an Applying a California Conflict of Laws analysis, the district court concluded UK law applies to this claim. California law does not apply, and therefore she dismissed the claim and then later awarded attorney fees to sanctuary as the prevailing party under Section 3344. I will explain that the district court's conflict of law analysis was erroneous, but even if it was right and the Court was correct that California law did not apply, then it was error to award fees under the statute that the Court had held does not apply to this case. So first, as to the choice of law analysis. This Court has held that whether or not a plaintiff resides in California, and here Mr. Love did reside both in California and Nevada. Is he a citizen of Nevada or California? A citizen? Yeah. I believe his domicile was in Nevada, Your Honor. However, for a conflict of laws analysis, the residence is important, and there's evidence that he resided in Nevada. But this was initially, at least when the case was, that he was a resident of Nevada. Yes, Your Honor. And then he owned a home in California. Yes, Your Honor. So for state residency purposes, isn't he a Nevada resident and citizen? Well, he is a Nevada domiciliary, which makes him a Nevada citizen, but the cases indicate that a person can have multiple residences, and we believe he could have multiple residences, one of which was in California. Before we launch into what you're about to launch into, I want to make sure I have my head around what the claim is against Sanctuary and who Sanctuary is. Sanctuary is a record company? Sanctuary owned the rights to Wilson's live recordings of Beach Boys songs. Okay, and they licensed the recording that is at issue in the case. They licensed the use of the songs? That is correct. They licensed the use of the recordings for the CD. They also, according to the complaint, they used Love's images, or they participated in selecting Love's images for the cover of the CD, and that cover then appeared in the newspaper, and the newspaper then was distributed in California. So Love's image was distributed in California. Did Sanctuary have to do with the images? Well, the allegation is that Sanctuary participated in putting together the CD cover. That's the allegation. And this is on the pleadings. The allegation is that they used Love's name and images on the cover without his permission, and that's at three excerpts of record, 598. That's the allegation in the complaint. All right? So now that you've described your complaint, I don't want to do anything else. If you've described your complaint, I find it hard to distinguish the derivative claim from the direct claim because you're only talking about his image, not the image that Brother Records would have, or the partnership. Your Honor, I believe Mr. Stillman will be addressing that issue. That's really not an issue in our appeal. Our appeal is simply the dismissal of the right of publicity claim, which Love brought on his own behalf, and the attorney of the award. Since you have limited time, why don't we just get to that? I think I understand what your argument is, that if it's a claim that doesn't lie because the proper law is U.K. law, then how can there be fees? But it seems to me there are any number of California cases that say if you assert a claim under California law where there's a fee-shifting statute and that claim is dismissed, or summary judgment is granted, that the other side gets fees as the prevailing party. So here, a right of publicity claim under California law was asserted, and it was dismissed by the trial court because the trial court found that the claim was not properly asserted because the proper law to apply was the law of the U.K. It's still a loss on the merits, isn't it? I mean, it's a determination that the right of publicity claim is meritless, and then fees would shift, right? Your Honor, I would respectfully disagree that it's a determination on the merits. Now, had this gone to summary judgment and had the defendant prevailed, that's one thing. Now, here, the Court never assessed the merits of the claim. From the outset, the Court said — From a fee perspective, why does that make any difference? If the claim is denied either jurisdictionally or on some other basis or on the merits, why doesn't the fee-shifting statute kick in? Your Honor, the statute says that the prevailing party under the statute is entitled to fees. Here, the sanctuary did not prevail under the statute. The Court never got to the statute. The Court said, I don't need to read that statute. I don't need to determine what it means. It doesn't apply to this case. This case is covered by British law. But if a party — the whole point of fee-shifting statutes is to create an incentive, one way or the other, with regard to certain kinds of rights of action. And so the effect of what you're arguing is that somebody could assert a — well, I'll avoid the word merit, but they could assert a claim under a statute for which there is no basis, whether in this case there's no jurisdictional basis, according to Judge Collins. And the defendant has to defend the claim. They have to expend money and hire counsel to defeat the claim, which is what they did. And you're saying that that's not what the — there's no fee-shifting, even if the claim never should have been brought? Your Honor, again, if the case is thrown out because of the statute, because the claim has no merit under the statute, that's one thing. Right. Here, it was thrown out before she ever looked at the statute on any choice of law determination. So I suggest — She said the statute didn't apply. She said California law does not apply. Right. So what's your best case that fee-shifting isn't appropriate under that? Your Honor, I found no case on the question. I think it's an issue of first impression. The other side cites the Cairn case, but that's distinguishable because there the district court and this Court had to look at the statute, interpret it, examine its legislative history, and then find on the merits it didn't — it didn't apply. That's not our case. So I'd like to defer to Mr. Stillman at this point. Okay. Thank you. Mr. Stillman, you may argue. Thank you. May it please the Court, Philip Stillman for Mike Love. I think the issue here is a very simple one. On a motion to dismiss under 12b-6, I don't think that the Court can satisfactorily decide standing. And I think that under this — under the situation here where the finding is as a matter of law that Mr. Love was not a derivative, adequate class representative, I think the Court erred either under an abusive discretion standard or as a matter of law. And I point to two different issues. First, under corporate code section 800, the California statute for derivative actions that only sets out two requirements. One, that the representative be a shareholder, and two, that demand is made to the corporation. Obviously, both elements were alleged in the case. Under Federal Rule 23.1, I think the Court found that out of the eight factors elucidated in the Larson decision, five of those factors were clearly satisfied by Mr. Love. And, however, the Court went astray on finding that the personal interest and his alleged vindictiveness towards the defendant precluded him from being an adequate class representative — shareholder representative. And in the Larson case, the issue is real simple on personal — on whether the personal interest factor is applicable. And those personal interests must be antagonistic to the corporation. The duty of a shareholder, or a director in this case, in a closely held corporation, is for the corporation. And as fled in the complaint, Mr. Love has no personal stake in the litigation other than as an equal shareholder and as one of four equal shareholders in the corporation. And given that there are only four corporate shareholders, two of which are clearly interested parties, and you have a one-to-one vote for pursuing the action, a tie game, as it were. So if you take a look at the Larson decision, the plaintiff was the only one to receive the benefit. That didn't disqualify him. That didn't make him an inadequate representative. Mr. Stillman? Excuse me. This is Silverman. I have a question for you about the attorney's fees aspect of this. Sure. If I understand your argument correctly, you contend that the fees were not properly awarded under 3344 because Wilson was not a prevailing party. Do I understand that right? You do, Your Honor. None of the defendants were a prevailing party. Okay. If we were to disagree with you then about who's prevailing and who isn't, then the fees were properly awarded. Would that be a fair summary of the point? Well, then there are subsidiary issues as to whether the court has used its discretion in awarding various elements of the fees. So although I would have to agree with you that if you find that the dismissal was otherwise proper and you find that notwithstanding the fact that it was a dismissal purely as to notwithstanding and not on the merits, I would say that the attorney's fees still cannot be awarded because under, for example, the California Drummond case, this case is not a prevailing party issue, so fees would not be awarded. The finding that Mr. Love was an inadequate class representative does not go to whether or not the corporation can still bring the claim or whether it's a merit. And I think the Drummond decision in California is very instructive on that issue so that if the court were to determine that even if the standing ruling was correct, which I submit it isn't, the court can still not award fees because this was not a prevailing party on the merits issue which is required for an award of fees under the publicity statute. Got you. Thank you. Your time is about two minutes. Do you want to reserve? No, Your Honor, because I think it's briefed pretty well in this issue. The vindictiveness issue is the second part that the court has relied upon and I have to say that the case decision specifically holds that animosity and not conceding that there was animosity is not a factor which would justify in its own determination throwing out a case on as for lack of adequacy of representation. And so in this case, in the case decision that vindictiveness issue was looked at as a way of maybe a representative would not be willing to settle because of animosity, but that's the lie by the record in this case. Mr. Love, as a shareholder representative in a derivative action in the state court, settled his claims against Jardim. As a matter of law, there's no way to find that either personal interest or vindictiveness support his lack of adequacy of representation. And if the court agrees with that and it finds that he is an adequate representative, it has to reverse and it has to reverse the fee. And I think on that basis, I will submit thank you very much, Your Honor. Thank you, Counsel. We'll hear from Sanctuary. Mr. Alderson. May it please the court, good morning. My name is Gregory Alderson and I represent the appellee of Sanctuary Records Group Limited. I just want to begin with a couple points on the attorney's fees. On the lead case, this issue about whether attorney's fees are recoverable under the California right of publicity statute, Love waived that argument. He didn't make any argument that those fees were not recoverable under that statute. And you would find that at Volume 9 of the excerpt of record 2147-48. In addition, there are cases that do award fees in this circumstance. I want to primarily address the ---- Before we leave attorney's fees, on the derivative case, why are you entitled to fees after the court dismissed the statutory claims that gave rise to the fees? In other words, after the ---- there was an order dismissing those claims and then we have a subsequent amended complaint. Why are you entitled to fees after that date? Your Honor, I believe the ---- Do I have the sequence wrong? I believe so. I think in the derivative case, there was only one motion. And that motion wiped out all the claims based on the adequacy of Mr. Love as a representative. I don't believe it occurred in a kind of sequence of events. I want to begin by talking a little bit about what Sanctuary did here because I think that's very important. All Sanctuary did in this case was license the sound recordings. That's it. Well, they say they've alleged that they also participated in the picture that appeared on the cover. Well, Your Honor, the claims that were dismissed on a motion to dismiss basis, they were all dealt with as a matter of law, assuming the allegations were true. The last piece of the case, which was the partial summary judgment motion on the Lanham Act claim 43A, they didn't put forward any evidence of Sanctuary's involvement at all here. I mean, all the record has is a declaration from Paul Kernick, who was the Sanctuary representative, and he basically said we weren't involved in anything relating to the promotion other than licensing the sound recordings. I think it's important to realize that this promotion was in connection with the release of an album that Brian Wilson was releasing called Smile. Sanctuary didn't have anything to do with that album either. All Sanctuary owned were the sound recordings from prior musical recordings. And so basically Sanctuary's involvement was only limited to licensing the sound recordings. Literally, if you look at the whole record, there's one email. I think it's in Volume 6, page 1305 to 1306. There's only one email from anyone at Sanctuary, and all the email says is basically what the terms of the license were going to be for the sound recordings. Twenty-five thousand pounds, and here's the list of songs. Now, they contorted that to say, oh, this shows that Sanctuary was in part running the show or collaborating on the design of the artwork or the photographs or whatever. There's just no evidence to support any of that. And indeed, when they asked for more discovery on summary judgment, they didn't even request discovery regarding Sanctuary. They knew Sanctuary wasn't involved in this. To be honest with you, there was no reason for Sanctuary to be dragged into this lawsuit to begin with. But be that as it may, I would like to address a couple of the specific allegations on the merits of the claims. On the right of publicity, I think they're confusing the Uniform Single Publication Act rule with choice of law. And if you look at their reply of Mr. Love, the reply doesn't do any weighing. Assuming there's a California interest here, and I don't think Mr. Love was a resident of California. Having a residence is not being a resident. Even if California had some interest here, it's clearly outweighed by the fact that 2.6 million copies of the CD were distributed in the U.K. And by the way, Sanctuary had no involvement in distributing the CD or in selling the CD. They didn't sell it in the U.K. They didn't sell it in the U.S. And as the record is clear, only 18 copies of the newspaper made their way to California. And none of those copies even have the CD in it. The only CD that they've provided evidence for is the CD bought on eBay by the paralegal for Mr. Love's counsel. So basically, it's virtually a no-brainer. If you're going to weigh comparative government interests here, U.K. has a stronger interest in protecting its citizens who comply with its laws who are doing business in the U.K. That's what happened here. And anyway, so that's the right of publicity issue. On the federal trademark claims, I think the law is pretty clear that Mr. Love doesn't have standing here to bring the claims in that his exclusive license for live performances, you cannot equate that with sound recordings, with live recordings on them. I couldn't find any case on this because it's just too absurd. They're completely different. They're completely different areas in which you have trademark protection. CDs, digital downloads, that's one thing. Live performances is a separate use in commerce. There's no question, and it's in the allegations in the complaint, that Mr. Love's license was only for live performances. So there's just no way he can assert a trademark infringement claim relating to a promotional CD. Separate out the issue that the CD was distributed in the U.K. Now, on the dilution claim, again, he was not the owner. He's not the registrant. And in dilution, his claim is even weaker because here it's clear that BRI, the company that Brother Records that owns the trademark, that they retain trademark rights for all rights regarding the Beach Boys other than live performances. And so to assert a dilution claim for Mr. Love to be able to do that, the case law is clear. You can't do that when you don't have the exclusive rights across the board. The limited license that Mr. Love had is in no way equivalent to a complete assignment of the rights, which would arguably get you close to being an owner. We don't have to get there if the Lanham Act doesn't apply because everything of consequence happened in England, right? I agree with that too, Judge Fogle. I think that if you look at the analysis in the Timberline case, the three factors, Love makes a big play that there is some effect in California on California commerce because of these few CDs and newspapers that made their way here. You still have to balance that effect with the effect in England. And when you look at those seven sub-factors, which basically compare the effect on commerce in each jurisdiction, again, I don't know. So if this is a case where you really just cannot have extra territorial application of the Lanham Act, this whole segment of your argument is moot, right? Yes. All right. I mean, that and the fact that there's no evidence Sanctuary did anything here, nothing, other than license and sound recordings. I suppose we have to analyze standing in the first instance, though. It's a jurisdictional issue. I mean, that would be one of the predicates. I think that's probably correct. I think you could do it either way, to be honest. Okay. So let's see. I want to talk for – so anyway, there was a lot of airtime in the briefs about Mr. Love's declaration that the promotional CD in the U.K. somehow affected his touring revenue in the U.S. and in California. Now, how Mr. Love would possibly be able to make that statement under oath, I don't know. But it's just irrelevant. You don't have to get to that issue. And Judge Collins was quite correct in rejecting that. It's entirely speculative. Whether or not we object it, there's case law authority that says that the trial court doesn't have to consider a statement where there's clearly no personal knowledge and it's not based on competent evidence. As far as the derivatives claims go, I mean, there are nine factors under Larson. I don't think it's a scoreboard issue. It's 5-4, so they win. I think the factors that weigh against Love here are fatal in this case. He clearly has a greater personal interest than any of the shareholders or the corporation. And, in fact, in his brief in the league case, he's saying how Mr. Wilson and Mr. Love are in competition for ticket sales and to sell CDs, et cetera. By doing that, he's burying his ability to assert a derivative claim by saying that, oh, no, I'm just doing this for the cause of the corporation. I mean, just the sequence of events of suing however many causes of action he brought individually, losing across the board, and then starting over derivatively, I think speaks volumes of what Mr. Love's motivation here. The vindictiveness issue, I mean, not only it's determinative, but if you read the pleadings, there's a lot of that there. It doesn't have anything to do with sanctuary, but there's a lot of that there. And then the economic entanglements. And, again, this is where clearly there's competition between Love and Wilson, and it's clear that Love is not a proper representative for any derivative action. There's two alternative grounds that I just want to mention. I don't think you need to go there, but there is the business judgment rule. I do think it's a little closer question about at the pleading stage whether the court could determine that Mr. Jardim was not pled to be an interested director. But I think it's moot because I think the adequacy of the representation is not there. And, by the way, I think they have not refuted the fact that this should be reviewed on an abuse of discretion standard. That's a very important point on the derivative front. And, finally, this is a point we did not put in the brief, but if you thought Mr. Love was an adequate representative, and you thought the business judgment rule didn't save the company on that issue, you still have the merits of all the claims. And if you map out the analysis of Judge Collins in the lead case, all of that, the entire argument still applies. I mean, the only difference in what Judge Collins did in the lead case is on a couple of the trademark claims, Judge Collins ruled that there was no standing. But, alternatively, she held that there was the Lanham Act didn't apply extraterritorially. That analysis would apply equally in a derivative context. So if you wanted to wade all the way through to the merits on the derivative end, you get back to basically the merits of the lead case. Unless the Court has any questions, I think I'm done. Roberts. Thank you. Thank you, counsel. Mr. Tilner, we'll give you two minutes. Thank you, Your Honor. A couple of points. Counsel argued that Mr. Love waived the argument that fees under 3344 were improper. That's the first time I've heard such a claim. Secondly, at pages 60 to 61 of the appellee's brief, they address this point. They do not contend that Love waived the argument. So I don't believe that's proper assertion today. In any event, it's a legal issue that this Court could take up for the first time if it wanted. I'd like to just say that as to ER volume 9, 247 to 48, what's there? What are we going to find? Your Honor, I don't have that volume with me, and I don't know what's there. But as I said, in the red brief, they make no such claim. The Downing case is something that I would like to call this Court's attention to regarding whether California has an interest in vindicating Mr. Love's right of publicity. In Downing, the plaintiffs did not reside in California. They brought an action in California under the right of publicity. And this Court held California law applies. California has a compelling interest in vindicating misappropriations that occur within its borders. Now, yes, there was some misappropriation in the U.K. as well in this case, but it's undisputed. There was misappropriation within California's borders. Is it possible in an Internet world to make anything immune from this right of publicity statute? If 99.99999% of the misappropriation occurs in Kazakhstan, and there's two incidents of Internet hits in California, is there still a claim here? Your Honor, the Internet raises issues that go way beyond what we can deal with here. I think this is a simple case. We've got an old-fashioned newspaper that was distributed in California, and it had Mr. Love's image on it. So I think under Downing, which is where you had a catalog with a photograph of the plaintiffs, and this Court said California law applies. Yes, that was a nationwide catalog, distributed in many, many other jurisdictions. The Court said California applies because the misappropriation occurred in California as well as elsewhere, and that's our case. Thank you. Thank you, counsel. Thank you. The case is submitted for decision, and we'll be in recess until tomorrow. All rise for a moment of recess. Thank you.
judges: Fogel, Thomas, Silverman